**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**STEWART RUTLEDGE,**                                                             **PLAINTIFFS**
**BRITTON JONES, and**
**LEN REEVES**

**V.**                                                                              **NO. 3:24-CV-73-DMB-JMV**

**DAVID CASE**                                                                                  **DEFENDANT**

**OPINION AND ORDER**

Stewart Rutledge, Britton Jones, and Len Reeves sued David Case alleging breach of contract, fraud, and other state law claims arising from their agreement with Case regarding Tennessee tax credit housing developments. Case moves to dismiss this case for lack of personal jurisdiction or, alternatively, to transfer the case to the Eastern District of Tennessee. Because the Court concludes that it has personal jurisdiction over Case and that transfer is not appropriate, Case's motion will be denied.

**I
Procedural History**

On February 7, 2024, Stewart Rutledge, Britton Jones, and Len Reeves filed a "Verified Complaint and Application for Injunctive Relief Pursuant to Miss. R. Civ. P. 65(a)" in the Circuit Court of Lafayette County, Mississippi, against David Case. Doc. #2. In their complaint, the plaintiffs allege claims for breach of contract, quantum meruit, fraud and misrepresentation, declaratory judgment, injunctive relief, and alternatively, conversion, arising from a dispute between them and Case regarding their partnership to develop low-income housing in Tennessee. *Id.* at PageID 76–82. On March 29, 2024, Case, asserting diversity jurisdiction, removed the state court case to the United States District Court for the Northern District of Mississippi. Doc. #1.

After the Court granted Case's request for an extension to respond to the complaint, the plaintiffs filed a "Verified Amended Complaint and Application for Injunctive Relief Pursuant to Fed. R. Civ. P. 65(a)" on April 18, 2024, alleging the same claims against Case.[1]  Doc. #9.

On May 2, 2024, Case filed "Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer to Eastern District of Tennessee (Knoxville Division)" "under Fed. R. Civ. P. 12(b)(2), or, alternatively, … 28 U.S.C. § 1404(a)."[2]  Doc. #10.  The plaintiffs responded in opposition on May 16, 2024.  Doc. #14.  Case replied on May 31, 2024.  Docs. #18, #19.[3]

## II
## Standard

### A.  Federal Rule of Civil Procedure 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) authorizes a party to move for dismissal for lack of personal jurisdiction.  When dismissal based on lack of personal jurisdiction is sought, "the plaintiff bears the burden of establishing jurisdiction, but need only present prima facie evidence." *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 233 (5th Cir. 2016).  In determining whether a prima facie case has been shown, "uncontroverted, nonconclusional factual allegations in the plaintiff's complaint must be taken as true and all controverted allegations must be resolved in the plaintiff's favor."  *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001). "The district court is not obligated to consult only the assertions in the plaintiff's complaint in determining whether a prima facie case for jurisdiction has been made. Rather, the district court

---

[1] No leave of court was required for the plaintiffs to amend their complaint.  *See* FED. R. CIV. P. 15(a)(1).

[2] Case's memorandum brief indicates his motion to dismiss is directed to the plaintiffs' amended complaint.  Doc. #11 at 1.

[3] Case's May 31 reply filings consist of "Defendant's Rebuttal Brief in Support of Motion to Dismiss or Transfer" and "Defendant's Supplement to Motion to Dismiss or Transfer."  Docs. #18, #19.  Case erroneously docketed the latter as a motion; however, the Clerk of Court modified the filing to reflect the correct filing event and link it to the motion to dismiss.

2

may consider the contents of the record at the time of the motion, including affidavits." *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)).

### B. 28 U.S.C. § 1404(a)

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." If a party establishes the action could have been properly brought "in the destination venue," "[t]he ultimate inquiry is whether the destination venue is 'clearly more convenient than the venue chosen by the plaintiff.'" *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 629–30 (5th Cir. 2022) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008). This requires a defendant to "establish good cause for transfer based on convenience and justice" rather than merely citing reasons supporting why litigating in another forum is more convenient. *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022).

### III
### Relevant Factual Allegations

Stewart Rutledge, Britton Jones, and Len Reeves are experienced developers in tax credit housing developments. Doc. #9 at PageID 154. In January 2020, David Case approached Rutledge, Jones, and Reeves to request their assistance with a Tennessee tax credit housing development ("THDA"). Doc. #9 at PageID 154. Case "had no experience in Tennessee 9% tax credit housing development." *Id.* at PageID 154–55. Case requested and Rutledge, Jones and Reeves agreed to have "an in-person meeting in Lafayette County, Mississippi for the purposes of introduction and exploration of a business relationship." *Id.* at PageID 155. Case traveled to Oxford, Mississippi to present a project and requested their assistance with the project. *Id.*

3

Case desired Rutledge, Jones, and Reeves to provide two distinct services as part of their agreement—"Developer Experience" and "fee-for-work." *Id.* at PageID 155–56. They verbally agreed to the terms of both services in Lafayette County, Mississippi. *Id.* at PageID 159. Case then left town. *Id.* The next day, on January 29, 2020, Rutledge, Jones, and Reeves sent an email to Case for the purpose of confirming the verbal agreement they reached the day before. *Id.* The agreement included a provision that Rutledge, Jones, and Reeves would assist Case in obtaining tax credits for the Sanda Mills project, and Case would continue to try and work with them and give them the first right of refusal on all Tennessee projects. *Id.* at PageID 155, 157–58. On January 30, 2020, Case responded to the email by confirming the agreement, as-stated, except he desired clarification regarding certain terms. *Id.* at PageID 159. On February 8, 2020, after receiving clarification, Case confirmed his agreement to those terms.[4] *Id.*

On September 1, 2023, Rutledge, Jones, and Reeves learned that Case "submitted an application for a projection referred to as Giffin School 2023, without contacting, considering, or consulting [them] in any way whatsoever." *Id.* at PageID 161.

## IV
## Analysis

In seeking to dismiss or transfer this case, Case argues that "[t]his Court lacks personal jurisdiction over [him]" and the "United States District Court for the Eastern District of Tennessee (Knoxville Division) provides a more convenient forum for the parties and witnesses to resolve this dispute." Doc. #10 at PageID 182. The plaintiffs counter that Case "has failed to satisfy the burden required by Rule 12(b)(2) of the Federal Rules of Civil Procedure … and 28 U.S.C. §1404(a)." Doc. #14 at PageID 232.

---

[4] Case "desired clarification regarding 'who might be developer' and 'p.'" Doc. #9 at PageID 159; Doc. #9-1 at PageID 179.

4

### A. Personal Jurisdiction

"A federal district court sitting in diversity may exercise personal jurisdiction over a foreign defendant if (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (citation omitted). "The Due Process Clause of the Fourteenth Amendment permits a court to exercise personal jurisdiction over a foreign defendant when (1) "that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 470 (quoting *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999)). Consequently, an issue of personal jurisdiction requires an analysis under both "applicable state law and the federal constitution." *Wyatt v. Kaplan,* 686 F.2d 276, 279 (5th Cir. 2024).

#### 1. Mississippi long-arm statute

"Mississippi's long-arm statute authorizes personal jurisdiction over a nonresident defendant … if: the defendant (1) makes a contract with a resident of Mississippi to be performed in whole or in part in Mississippi; (2) commits a tort in whole or in part in Mississippi; or (3) conducts any business or performs any character of work in Mississippi." *Pace v. Cirrus Design Corp.*, 93 F.4th 879, 894 (5th Cir. 2024) (citing Miss. Code Ann. § 13-3-57). Case does not mention the long-arm statute in his initial brief. In their response, relying on a declaration by Rutledge that they performed their part of the agreement with Case from their offices in Mississippi, the plaintiffs submit that "this Court has personal jurisdiction of [sic] [Case] under the long arm statute by virtue of [Case] making a contract … in Lafayette County, which was to

5

be performed … in Lafayette County, and because [he] committed a tort in Lafayette County." Doc. #15 at PageID 361; Doc. #14-2 at PageID 265–66.  In his reply, Case acknowledges that the plaintiffs "reside in Mississippi and performed some work in connection with the THDA applications and low-income housing developments in Mississippi."  Doc. #19 at 3.

### a. Contract

"A nonresident who makes a contract with a resident of the state to be performed in whole or in part within the state is within the reach of the [Mississippi] long-arm statute." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 869 (5th Cir. 2000).  Since there is no dispute here that some work under the parties' contract was performed in Mississippi, the plaintiffs have "presented a prima facie cause under the 'contract prong' of the Mississippi long-arm statute." *Id.* at 870 n.9.

### b. Tort

The plaintiffs contend that because Case "committed a tort in Lafayette County, Mississippi, when he fraudulently misrepresented his intentions with regard to his obligations under the contract,"[5] "personal jurisdiction under the tort prong of the long arm statute is even clearer."  Doc. #15 at PageID 361, 365.  Case replies that even if he "represented to Plaintiffs in Mississippi that he would try to work with and give them rights of first refusal on future Tennessee developments, such promise of future conduct cannot support a claim for fraudulent misrepresentation."  Doc. #19 at 12 (emphasis omitted).

"In construing the tort-prong of Mississippi's long-arm statute, the Mississippi Supreme Court has held that personal jurisdiction over a defendant who allegedly committed a tort is proper if any of the elements of the tort—or any part of an element—takes place in Mississippi." *Jobe v.*

---

[5] In their response, relying on a declaration by Rutledge, the plaintiffs submit that "David Case fraudulently induced [them] to enter into the agreement with him in Lafayette County, Mississippi, for the purpose of allowing him to gain the valuable and necessary 'Developer Experience Points' and undertake projects without [them] and with no intention of fulfilling obligations under the agreement."  Doc. #14-2 at PageID 268.

6

*ATR Mktg., Inc.*, 87 F.3d 751, 753 (5th Cir. 1996) (citation omitted). Under Mississippi law, fraudulent misrepresentation requires "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of the truth; (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." *Pace*, 93 F.4th at 889 (citing *Elchos v. Haas*, 178 So. 3d 1183, 1198 (Miss. 2015)); *see Koegel v. Baugur Group, HF*, No. 06-60255, 2007 WL 1454453, *1 (5th Cir. May 15, 2007) ("The law of Mississippi is that 'not every spoken untruth is actionable as a fraud. It is only if that untruth was designed to, and did, in fact, induce the hearer to change his position in justifiable reliance on the untruth that it becomes potentially actionable.'") (quoting *Lacy v. Morrison*, 906 So. 2d 126, 130 (Miss. Ct. App. 2004)). So to satisfy the tort prong of their fraudulent misrepresentation claim, the plaintiffs must show one or more elements of the claim occurred in Mississippi. *See, e.g.*, *Koegel*, 2007 WL 1454453 at *1–2 (proof of reliance on fraudulent misrepresentation required to meet tort prong of Mississippi long-arm statute).

Here, the plaintiffs allege Case "made material misrepresentations and/or omitted material facts from [them] regarding his intentions to pay for their services, his intentions to work with them on [his] future TN 9% projects and his intentions to give the Plaintiffs rights of first refusal on [his] future TN 9% projects" and that they "relied upon said promises and provided the agreed upon services to [Case] in reliance thereon."[6] Doc. #9 at PageID 166. Since the plaintiffs allege they relied on Case's misrepresentations by providing the agreed-upon services from Mississippi,

---

[6] Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake." *See Strickland v. Bank of N.Y. Mellon*, 838 Fed. App'x 815, 820 (5th Cir. 2020) (party asserting fraud must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.") (citation omitted).

7

*see* Doc. #9 at PageID 166, Case's fraudulent misrepresentation claim "falls within the aegis of the [long-arm] statute," *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 272 (5th Cir. 2006).

### 2. Due process

#### a. Minimum Contacts

Case contends that he "[does] not have contacts with or direct activities toward Mississippi sufficient for this Court to exercise specific jurisdiction" over him and that "[his] single, preliminary visit to Mississippi in January of 2020 is insufficient to create specific personal jurisdiction over [him]."[7] Doc. #11 at 8. The plaintiffs respond that "it is beyond dispute that [Case] had minimum contacts with Mississippi by initiating a meeting in Mississippi …, by soliciting [them] to enter into an agreement while [he] was present in Mississippi, by actually entering into an agreement in Mississippi, and by agreeing that the services to be provided … would be performed … in Mississippi," and because "all claims … arise out of the contract made in Lafayette County, Mississippi and the tortious acts of [Case] related to the making of the contract in Mississippi." Doc. #15 at PageID 365–66. Citing a Mississippi Supreme Court opinion, Case replies that he did not enter into an agreement with the plaintiffs in Mississippi because he "ultimately accepted Plaintiffs' proposed terms … in North Carolina." Doc. #19 at 6–7.

Specific jurisdiction exists "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate

---

[7] Case also argues that because he is "a North Carolina resident with virtually no contact of any nature with Mississippi" and "does no business and has no assets in Mississippi," the Court does not have general jurisdiction over him either. Doc. #11 at 5. A party's minimum contacts with the forum can give rise to "either specific or general jurisdiction." *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). But the plaintiffs do not contend the Court has general jurisdiction over Case; rather, they argue grounds only for the exercise of specific jurisdiction. *See generally* Doc. #15. So the Court will discuss only specific jurisdiction. *See Fernandez v. Jagger*, No. 23-30909, 2024 WL 3717264, at *2 (5th Cir. Aug. 8, 2024) (while jurisdiction can be general or specific, only specific jurisdiction analysis is necessary because "this case only concerns the latter").

to those activities." *Sangha*, 882 F.3d at 101. It requires more than "random, fortuitous, or attenuated contacts [the defendant] makes by interacting with other persons affiliated with the State" and must rely on "intentional conduct by the defendant that creates the necessary contacts with the forum." *Tutus, L.L.C. v. JLG Indus., Inc.*, No. 21-20383, 2022 WL 1517044, at *1 (5th Cir. May 12, 2022) (alteration in original). "[A] single act by the defendant directed at the forum state can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted" though "contracting alone with a party located in the forum is not automatically enough to establish sufficient minimum contacts." *Ancor Holdings, L.P. v. Landon Cap. Partners, L.L.C.*, 114 F.4th 382, 394–95 (5th Cir. 2024). Nor does the "unilateral activity of a plaintiff who claims some relationship with a nonresident defendant alone … satisfy the requirement of contact with the forum state." *Cent. Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 382 n.6 (5th Cir. 2003) (citing *Burger King Corp. v. Rudzewicz*, 417 U.S. 462, 474 (1985)); *see Barnstone v. Congregation Am Echad*, 574 F.2d 286 (5th Cir. 1978) (rejecting Texas-based architect's argument that remotely providing from Texas services for construction of synagogue in Maine established defendant's necessary contact with Texas). However, when a nonresident defendant takes action that "cause[s] business activity, foreseeable by the defendant, in the forum state, such action by the defendant is considered a minimum contact for jurisdictional purposes." *Miss. Interstate Exp., Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1007 (5th Cir. 1982). "The business activity is foreseeable by the defendant if the forum state is 'clearly the hub of the parties' activities'" or, more specifically, "where the work contemplated by the contract is to be done." *Conrad Shipyard, L.L.C. v. Franco Marine 1 LLC*, 431 F. Supp. 3d 839, 851 (E.D. La. Jan. 3, 2020) (quoting *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 313 (5th Cir. 2007)). In *Mississippi Interstate*, specific jurisdiction was present because the defendant took affirmative action to

9

engage with the plaintiff in the forum state by initiating all the activity within the forum with knowledge that the plaintiff would operate only in the forum, making it clear that the forum was "the hub of the parties['] activities." *Miss. Interstate*, 681 F.2d 1007–10. Likewise, in *Central Freight Lines*, specific jurisdiction was found where the defendant "specifically and deliberately reached out to a Texas corporation … with the deliberate aim of entering into a long-standing contractual relationship with [it]" such that the defendant was aware it was "affiliating itself with an enterprise based primarily in Texas," and although only the plaintiff performed in Texas, the defendant "took purposeful and affirmative action by entering into [an agreement] that had the clearly 'foreseeable' effect of 'causing business activity in the forum state.'"[8] *Cent. Freight Lines*, 322 F.3d at 382.

Here, Case intentionally sought the plaintiffs' services—presumably because of their expertise in tax credit housing developments—for the "exploration of a business relationship." Doc. #9 at 154–55. Even if he visited Mississippi only once and did not perform any work related to the tax housing credit applications in Mississippi, Case was aware the plaintiffs would primarily, if not wholly, perform their services under the agreement from their offices in Mississippi, *see* Doc. #11 at 6–7 (Case's acknowledgment of "preliminary meeting between [him] and Rutledge in Mississippi" and "Plaintiffs' performance of services from Mississippi"), thereby generating business activity in the state. Consequently, Case should have anticipated that, although his agreement with the plaintiffs concerned a development in Tennessee, he could be subject to litigation in Mississippi if the agreement soured.[9]

---

[8] *Central Freight* held the defendant "should have reasonably anticipated being haled into court in Texas on … claims related to [the] Agreement, notwithstanding [its] relatively brief *physical* presence in the state." *Cent. Freight Lines*, 322 F.3d at 383 (emphasis in original).

[9] This is particularly true since the agreement lacks a forum selection provision which excludes Mississippi as a forum for litigation. *See Cent. Freight Lines*, 322 F.3d at 383 (lack of forum selection clause in agreement meant defendant could not expect litigation in plaintiff's choice of forum).

Because the plaintiffs' breach of contract and fraudulent misrepresentation claims against Case arise from their agreement concerning the THDA applications, there is a clear causal link between the business relationship between the plaintiffs. For these reasons, the Court concludes Case has sufficient minimum contacts with Mississippi for the exercise of specific jurisdiction.[10]

### b. Fairness

Once minimum contacts with the forum are established, the question becomes whether jurisdiction comports with "traditional notions of fair play and substantial justice." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999). Then, "the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable," and he must make a "compelling case" to satisfy such burden. *Sangha,* 882 F.3d at 102. The court must balance "(1) the burden on the nonresident defendant of having to defend itself in the forum, (2) the interests of the forum state in the case, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in the most efficient resolution of controversies, and (5) the shared interests of the states in furthering fundamental social policies." *Id.* These factors "may not be employed in such a way as to make litigating so gravely difficult and inconvenient that a party is at a severe disadvantage in comparison to his opponent." *Burger King*, 471 U.S. at 478.

Case argues this Court's exercise of "personal jurisdiction over [him] … would offend traditional notions of fair play and substantial justice." Doc. #11 at 8–9. The plaintiffs respond:

> Mississippi has a significant interest in adjudicating matters arising out of tortious conduct (i.e., fraudulent misrepresentation) committed inside Mississippi against its residents, such as the Plaintiffs. It also has a significant interest in deciding matters concerning contracts made, in whole or in part, in Mississippi. The Plaintiffs are residents of Mississippi, this forum is convenient for the Plaintiffs and

---

[10] Case states that "[e]ach [of the plaintiffs'] claim[s] must be analyzed for personal jurisdiction individually." Doc. #19 at 3. This separate analysis is required only where the plaintiff brings "multiple claims that arise out of different forum contacts." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). That is not the case here. Although the plaintiffs assert multiple claims against Case, each claim relates to his visit to Mississippi and subsequent agreement with the plaintiffs.

11

> may provide effective relief. Most of the witnesses who will testify as to the formation of the contract, the misrepresentations made by the Defendant, and the work performed by the Plaintiffs reside in Mississippi. Also, the documents supporting the services provided by the Plaintiffs to the Defendant under the agreement are located in Mississippi. Other than the final product of the Plaintiffs work being submitted to the THDA in Tennessee and the Defendant residing in North Carolina, basically everything else related to the claims brought in this case are in Mississippi.

Doc. #15 at PageID 369. Case replies:

> Other than Plaintiffs' residence, this case has no Mississippi connection. Rather, Tennessee lies at the center of this dispute which concerns applications to the THDA (in Nashville) for tax credits to develop low-income housing in Tennessee. All development and construction occurred in Tennessee. In addition to the THDA employees, [he] has identified seven non-party witnesses. Each resides outside of Mississippi and beyond this Court's subpoena power. Travel to this District would be time consuming and expensive for [him] and the non-party witnesses. Further, [he], a North Carolina resident, conducts no business and has no assets in Mississippi.

Doc. #19 at 14–15 (footnotes omitted).

The first factor "requires a court to consider the practical problems resulting from litigating in the forum." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 263 (2017). Case's implication that litigating in Mississippi is unduly burdensome is overcome by the fact that he traveled to Mississippi to initiate a business relationship with the plaintiffs. *See Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993) (nonresident defendant defending action in Texas not an unreasonable burden since its employees traveled there in connection with its business relationship with plaintiff). More, "once minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant." *Wien*, 195 F.3d at 215. At most, Case "demonstrates an inconvenience which would be equally felt by forcing the plaintiff to litigate [elsewhere]." *Id.* at 216.

Mississippi clearly has an interest in the suit because all three plaintiffs are residents of Mississippi. Doc. #9 at PageID 153; *see McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)

(state has "manifest interest in providing effective means of redress" for its resident plaintiffs); *see also Ruston*, 9 F.3d at 421 ("Texas, as forum state, also has an interest in adjudicating a dispute that involves a sale of goods to a Texas consumer.").

The plaintiffs have a strong interest in obtaining convenient and effective relief. The claims they assert against Case arise directly from their Mississippi-based business relationship with him. The Northern District of Mississippi and the Eastern District of Tennessee's respective interests in efficiently resolving this action and the advancement of social policies "will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State." *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 115 (1975). Because the Court determined the factors discussed above favor personal jurisdiction over Case, it concludes that the Northern District of Mississippi is most suited to resolve the dispute among the plaintiffs and Case. Accordingly, the Court's exercise of personal jurisdiction over Case does not offend the "traditional notions of fair play and substantial justice."

### 3. Summary

Based on the conclusions above, Case's request to dismiss this case for lack of personal jurisdiction is denied.

### B. Alternative Request to Transfer

Case argues that "even if personal jurisdiction exists, the Court should transfer this action to the United States District Court for the Eastern District of Tennessee (Knoxville Division) under 28 U.S.C. § 1404(a)" because it "offers a more convenient forum for the parties and non-party witnesses and better serves the interests of justice;" "Plaintiffs could have brought this action in Knoxville;" and the "private and public interest factors favor transferring this action to Knoxville."

13

Doc. #11 at 1, 9–10, 14. The plaintiffs do not dispute that this action could have been properly brought in the Knoxville Division of the Eastern District of Tennessee.[11] Instead, they focus on why transfer is "an inconvenience to all except [Case] and … not in the interest of justice."[12] Doc. #15 at PageID 370.

In evaluating convenience, the Court should consider "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive; (5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013). The first four factors are commonly described as "private interest factors" and the remaining four as "public interest factors." *In re Planned Parenthood*, 52 F.4th at 630.

As to the ease of accessibility to sources of proof, Case submits that the Court "should consider the distance a party must transport documents, or other evidence, from their existing location to the trial venue." Doc. #11 at 12. The plaintiffs respond that the "majority of the evidence is located in Mississippi." Doc. #15 at PageID 370. There is nothing in the parties' submissions on the motion (or in the record) suggesting the evidence and proof involved in this case can only be accessed in the Northern District of Mississippi or the Eastern District of Tennessee. The THDA applications and the parties' written agreement constitute documentary

---

[11] Since this action involves a low-income housing project, Giffin School, located in Knoxville, Tennessee, 28 U.S.C. § 1391(b)(2) allows a civil action to be brought in a district where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated."

[12] The plaintiffs draw a correlation between why transfer in not in the interest of justice and the Court having personal jurisdiction over Case. *See* Doc. #15 at PageID 370. However, § 1404(a) "makes … no mention of personal jurisdiction." *Conner v. Kelly*, No. 23-11225, 2024 WL 3177782, at *3 (5th Cir. June 26, 2024).

evidence that can be shared, accessed, and managed in this Court as efficiently as in any other forum. *See In re Planned Parenthood*, 52 F.4th at 630 ("The location of evidence bears much more strongly on the transfer analysis when, … the evidence is physical in nature."). Consequently, this factor is neutral.

As to the availability of compulsory process, Case cites Federal Rule of Civil Procedure 45(b)(2)(B)[13] as authority for his argument that the various Tennessee and Arizona non-party witnesses he references as "fact witnesses" are outside the Court's 100-mile subpoena power. Doc. #11 at 12–13. The plaintiffs counter that there are also non-party Mississippi witnesses. Doc. #15 at PageID 370. Under Rule 45(c)(1), the Mississippi non-party witnesses fall well beyond the 100-mile subpoena power of the Eastern District of Tennessee, similar to how the Tennessee and Arizona non-party witnesses are beyond this Court's subpoena power.[14] More, this factor is given less weight because there is no indication in the parties' submissions on the motion that any witnesses are unwilling to testify. *See In re Planned Parenthood*, 52 F.4th at 630 (district court correctly found factor did not favor transfer, as petitioners failed to identify unwilling witnesses).

As to the cost of attendance for willing witnesses, Case relies on several Google Maps excerpts depicting the various travel routes and flight options available to the various witnesses residing in the Tennessee cities of Knoxville, Cleveland, and Nashville. Doc. #10-2 at PageID 191–212; Doc. #18-1 at PageID 380–99. These maps appear to illustrate what he asserts to be the convenience of litigating in Knoxville. In response, the plaintiffs highlight the availability of nearby airports that can accommodate Case's travel to Mississippi if the case remains in this federal district. Doc. #15 at PageID 370. In "giving particular attention to where the witnesses

---

[13] There is no (b)(2)(B) subsection of Federal Rules of Civil Procedure 45. *See* FED. R. CIV. P. 45.

[14] According to Google Maps, there are at least 400 miles between the Knoxville Division courthouse in the Eastern District of Tennessee and the Oxford Division courthouse in the Northern District of Mississippi.

that the parties would rely upon are located" and "how burdensome it would be for them to appear in either the home or the foreign forum," *Nandjou v. Marriot Int'l, Inc.*, 985 F.3d 135, 142 (5th Cir. 2021), litigating in the Eastern District of Tennessee would be more cost-effective for the several non-Mississippi witnesses Case relies on, including THDA employees.

As to the Eastern District of Tennessee's caseload, the Fifth Circuit has acknowledged the unreliability of docket efficiency and its speculativeness in a § 1404(a) analysis. *In re Clarke*, 94 F.4th 502, 515 (5th Cir. 2024). This Court will not make an "uniformed guess" regarding the Knoxville division's docket. *See id.* So this factor does not weigh in any party's favor.

This Court is most suited to adjudicate this case because the desire to resolve a dispute between Mississippi residents and a non-Mississippi resident is irrefutable especially when the action is based on Mississippi law.

Finally, there is no indication that a conflict between the laws of Mississippi and Tennessee will arise.

On balance, the Court concludes that transferring this case to the Knoxville Division of the Eastern District of Tennessee is not more convenient than litigating in the Northern District of Mississippi. *See In re Planned Parenthood*, 52 F.4th at 632 ("[D]istrict courts have broad discretion in deciding motions to transfer; they only need grant such a motion where the evidence demonstrates that the destination venue is clearly more convenient than the chosen venue.") (citation and internal quotation marks omitted).

## V
## Conclusion

Because the Court concludes that it has personal jurisdiction over Case and that the Eastern District of Tennessee is not a more convenient forum, Case's motion to dismiss for lack of personal jurisdiction or, alternatively, transfer to the Eastern District of Tennessee [10] is **DENIED**.

**SO ORDERED**, this 27th day of January, 2025.

                                                            **/s/Debra M. Brown**
                                                            **UNITED STATES DISTRICT JUDGE**