IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

| | |
|---|---|
| STEWART RUTLEDGE, BRITTON JONES, and LEN REEVES | PLAINTIFFS |
| V. | NO. 3:24-CV-73-DMB-JMV |
| DAVID CASE | DEFENDANT |

**OPINION AND ORDER**

Stewart Rutledge, Britton Jones, and Len Reeves sued David Case alleging breach of contract, conversion, and other state law claims arising from their agreement with Case regarding Tennessee tax credit housing developments. Case moves to dismiss the breach of contract and conversion claims as to a particular contract provision unless the real party in interest is added or substituted. Because the plaintiffs are the real parties in interest to those claims, Case's motion to dismiss will be denied.

**I**
**Procedural History**

On April 18, 2024, Stewart Rutledge, Britton Jones, and Len Reeves filed an amended complaint in the United States District Court for the Northern District of Mississippi against David Case.[1] Doc. #9. In their complaint, the plaintiffs allege claims for breach of contract, quantum meruit, fraud and misrepresentation, declaratory judgment, injunctive relief, and, alternatively, conversion, arising from a dispute between them and Case regarding their partnership to develop tax credit housing in Tennessee. *Id*. at PageID 164–72.

---

[1] The plaintiffs filed their original complaint on February 7, 2024, in the Circuit Court of Lafayette County, Mississippi. Doc. #2. Asserting diversity jurisdiction, Case removed the case on March 29, 2024. Doc. #1.

On April 11, 2025, Case filed "Defendant's Objection and Motion to Dismiss or Add Party under Federal Rules of Civil Procedure 17(a)."[2] Doc. #36. The plaintiffs responded in opposition on May 12.[3] Doc. #42. Case replied on May 22,[4] including a separately filed supplemental exhibit. Docs. #48, #49. On October 27, the Court denied the plaintiffs' motion to strike the supplemental exhibit or for leave to supplement their response. Doc. #62.

## II
## Rule 17(a)

Federal Rule of Civil Procedure 17(a) requires that "[a]n action must be prosecuted in the name of the real party in interest." FED. R. CIV. P. 17(a)(1). "The real party in interest is the person with the right to sue under substantive law, and the determination whether one is the real party in interest with respect to a particular claim is based on the controlling state or federal substantive laws." *BAC Home Loans Servicing, LP v. Tex. Realty Holdings, LLC*, 901 F. Supp. 2d 884, 907 (S.D. Tex. 2012) (citing *In re Davis*, 194 F.3d 570, 578 (5th Cir. 1999), and *Farrell Constr. Co. v. Jefferson Par., La.*, 896 F.2d 136, 140 (5th Cir. 1990)).

## III
## Background

### A. Factual Allegations

Stewart Rutledge, Britton Jones, and Len Reeves are experienced developers in tax credit housing developments. Doc. #9 at PageID 154. In January 2020, David Case approached the plaintiffs to request their assistance with a Tennessee tax credit housing development. *Id*. Case had no experience in Tennessee 9% tax credit housing developments. *Id.* at PageID 154–55. Case

---

[2] Approximately three months earlier, on January 27, 2025, the Court denied Case's motion to dismiss for lack of personal jurisdiction or to transfer to another district. Doc. #20.

[3] On April 24, on the plaintiffs' motion, the Court extended the deadline to respond. Doc. #39.

[4] On May 19, on Case's motion, the Court extended the deadline to reply. Doc. #47.

requested and the plaintiffs agreed to have an in-person meeting in Lafayette County, Mississippi for the purposes of introduction and exploration of a business relationship. *Id.* at PageID 155. Case traveled to Oxford, Mississippi, to present a project called The Historic Sanda Mills Lofts ("Sanda Mills Project") to the plaintiffs and requested their assistance with the project. *Id.* Case wanted the plaintiffs to provide two distinct services as part of their agreement—"Developer Experience" and "fee-for-work." *Id.* at PageID 155, 156. After they verbally agreed to the terms of both services in Lafayette County, Mississippi,[5] Case left town. *Id.* at PageID 159.

The next day, on January 29, 2020, the plaintiffs sent an email to Case confirming the verbal agreement they reached the day before. *Id.* The agreement included a provision that the plaintiffs would assist Case in obtaining tax credit points for the Sanda Mills Project, and Case would continue to try to work with them and give them rights of first refusal for his future Tennessee 9% tax credit housing projects. *Id.* at PageID 155, 157–58. The agreement also required Case to pay the plaintiffs $60,000.00 as promptly as possible when the Sanda Mills Project could afford to pay that sum. *Id.* at PageID 157; Doc. #9-1 at PageID 177.

On January 30, 2020, Case responded to the email confirming the agreement as stated but requesting clarification regarding certain terms.[6] *Id.* at PageID 159. On February 8, 2020, after receiving clarification, Case confirmed his agreement to those terms. *Id.*

On September 1, 2023, the plaintiffs learned that Case submitted an application for a project referred to as Giffin School 2023, without contacting, considering, or consulting them in

---

[5] Part of the agreement permitted the plaintiffs' various developer entities to sign on the applications so that they would accrue current Developer Experience points. Doc. #9 at PageID 158; Doc. #9-1 at PageID 177.

[6] Case desired clarification regarding who the developer is and the term providing the plaintiffs would be paid regardless of errors in the application. Doc. #9 at PageID 159; Doc. #9-1 at PageID 179.

any way whatsoever only one month after receiving the tax credits for the Sanda Mills Project. *Id.* at PageID 161.

### B. Development Services Agreement

On September 15, 2021, over a year and a half after Case confirmed his agreement to the terms of the plaintiffs' services, Case entered into a "Development Services Agreement" with Rosemark Real Estate, LLC, and Winreaux Development LLC, entities majority owned by Rutledge and Jones respectively, and THSML 2020, LP. Docs. #36-1, #36-2. THSML 2020, LP "was formed to acquire, construct, develop, improve, maintain, own, operate, lease, dispose of and otherwise deal with" the Sanda Mills Project. Doc. #36-1 at 1. The Development Services Agreement provides, among other things, that Rosemark is owed a $60,000 "Development Fee." Doc. #36-1 at 6.

### IV
### Analysis

Case "objects to Plaintiffs prosecuting the claims for breach of contract and conversion arising from the alleged $60,000 related to the Sanda Mill[s] Apartments Project" because, according to him, "Plaintiffs are not the real parties in interest" and "the alleged $60,000 payment is owed, if at all, to Rosemark Real Estate, LLC." Doc. #36 at 1, 2. Case asks the Court to "dismiss these claims absent the addition or substitution of Rosemark." *Id*. at 2.

The plaintiffs respond that the breach of contract claim and alternative conversion claim "seek to hold [Case] to the agreement he made with [them] … which predated the development services agreement at-issue;" "[Case] was contractually obligated to pay [them] the sum of $60,000.00 notwithstanding the development services agreement;" and "no novation occurred" when the parties created the Development Services Agreement. Doc. #43 at PageID 522, 523, 525.

4

Case replies that he is not obligated to pay the plaintiffs because "the Development Services Agreement clearly states that the rights and obligations with respect to the $60,000 Sanda Mill[s] Development Fee run between THSML 2020 (obligor) and Rosemark (obligee);" "communications between Plaintiffs and [him] before executing the Development Services Agreement … merged into the Development Services Agreement;" and "the Development Services Agreement expressly and impliedly novated and satisfied any earlier agreement as to the $60,000 Development Fee." Doc. #49 at 5, 8.

Mississippi substantive law applies in determining whether the plaintiffs are the real parties in interest as to their breach of contract and conversion claims.[7] The elements of a breach of contract claim under Mississippi law are "(1) 'the existence of a valid and binding contract,' and (2) a showing 'that the defendant has broken, or breached it.'" *Maness v. K & A Enters. of Miss.*, *LLC*, 250 So. 3d 402, 414 (Miss. 2018) (quoting *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1224 (Miss. 2012)). A binding contract has "(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *White v. Jernigan Copeland Att'ys*, *PLLC*, 346 So. 3d 887, 896 (Miss. 2022) (emphasis omitted) (quoting *Hattiesburg Health & Rehab Ctr., LLC v. Brown*, 176 So. 3d 17, 21 (Miss. 2015)). "Under Mississippi law a party may only recover damages for breach of contract if there is privity of contract between the damaged party and the party sought to be held liable for the breach." *Mortera*

---

[7] The 2020 Agreement does not contain a choice of law provision. *See generally* Doc. #9-1. While the Development Services Agreement states that it "shall be governed by and construed in accordance with the laws of the State," it does not specify what "State" that is. Doc. #36-1 at 8. In this diversity action, the Court applies the law of the forum state. *84 Lumber Co. v. Cont'l Cas. Co.*, 914 F.3d 329, 333 (5th Cir. 2019). The parties' briefs cite Mississippi law. Doc. #37 at 4; Doc. #43 at PageID 524–25; Doc. #49 at 6–8. Only in his reply brief and only for the elements of a breach of contract claim, Case cites Tennessee law in addition to Mississippi law. Doc. #49 at 6–7.

*v. State Farm Fire & Cas. Co.*, 561 F. Supp. 3d 684, 690 (S.D. Miss. 2021) (citing *Burns v. Wash. Sav.*, 171 So. 2d 322, 324 (Miss. 1965)).

### A. 2020 Agreement

The plaintiffs' breach of contract claim is based on Case's breach of the email agreement between them and Case ("2020 Agreement").[8] Doc. #9 at PageID 155–59, 164–65. Their conversion claim is based on Case retaining funds owed to them under the same agreement. *Id.* at PageID 171–72.

The plaintiffs allege the existence of a valid and binding contract between them and Case. The plaintiffs agreed to provide developer experience and fee-for-work services to Case in exchange for payment, *id*. at PageID 155–59, satisfying the first, second, third and fifth elements of the existence of a contract. There is no indication any party lacked capacity to contract. *See Frierson v. Delta Outdoor, Inc.*, 794 So. 2d 220, 224 (Miss. 2001) ("The law presumes a person sane and mentally capable to enter a contract. The burden is upon the party seeking to avoid an instrument on the ground of insanity or mental incapacity to establish it by a preponderance of proof.") (internal citation omitted). As for the final element, the Court is unaware of any legal prohibition precluding contract formation. Because the plaintiffs allege that they are parties to a valid contract which was breached by Case, considering the 2020 Agreement alone, the plaintiffs are the real parties in interest.

### B. Development Services Agreement

Case argues that privity of contract does not exist between the plaintiffs and him as to the Development Services Agreement because "any contractual right to recover belongs to Rosemark" and "this is neither an action to enforce … Rutledge's rights against Rosemark nor a derivative

---

[8] The amended complaint does not mention the Development Services Agreement. *See generally* Doc. #9.

action." Doc. #37 at 4. The plaintiffs respond that "[Case] was contractually obligated to pay [them] the sum of $60,000.00, notwithstanding the development services agreement." Doc. #43 at PageID 523. Case replies that "Plaintiffs do not dispute that the Sanda Mill[s] Development Services Agreement binds THSML 2020, on the one hand, and … [him], Rosemark and Winreaux, on the other," and "Plaintiffs are not personally parties to the [Development Services] Agreement." Doc. #49 at 7.

The parties agree that the plaintiffs are not parties to the Development Services Agreement and that privity does not exist between the plaintiffs and Case as to that contract. However, they disagree about the effect of the Development Services Agreement on the 2020 Agreement.

In their response brief, the plaintiffs note that "in essence, [Case] is arguing that a novation occurred." Doc. #43 at PageID 524. They argue that "[n]o novation occurred" because "there is no language in the development services agreement which effects an express novation," "the emails leading up to the execution of the development services agreement plainly show … both [Case] and … Rutledge clearly contemplated that [Case] owed $60,000.00 to [them]," and "[they] never agreed expressly or impliedly to relieve [Case] of his contractual obligations to them." *Id*. at PageID 524, 525.

Case replies that "[t]he merger doctrine prevents Plaintiffs from individually enforcing any claim to the Development Fee [because t]he communications between Plaintiffs and [him] before executing the Development Services Agreement, including the [2020 Agreement], merged into the Development Services Agreement;" and "[e]ven if the email discussions created a binding agreement as to the $60,000 Development Fee and the doctrine of merger did not apply, the Development Services Agreement expressly and impliedly novated and satisfied any earlier agreement" because "Plaintiffs negotiated the Development Services Agreement, … Rutledge and

7

Jones executed the Agreement on behalf of Rosemark and Winreaux," and "Plaintiffs inserted Rosemark as the oblige as to the $60,000 Development Fee." Doc. #49 at 8–9.

### 1. Merger

Under Mississippi law, "[i]n a contract which purports to be complete, prior or contemporaneous negotiations are merged into the completed contract." *Singing River Mall Co. v. Mark Fields, Inc.*, 599 So. 2d 938, 946 (Miss. 1992). However, merger does not apply here because, based on the plaintiffs' allegations, the 2020 Agreement is a separate contract, not just a prior negotiation. *See Union Compress & Warehouse Co. v. Mabus*, 217 So. 2d 23, 25–26 (Miss. 1968) (no merger when earlier communication qualified as separate contract).

### 2. Novation

Mississippi law recognizes both express novation and implied novation. *Robinson v. Guarantee Tr. Life Ins. Co.*, 389 F.3d 475, 479 (5th Cir. 2004). Express novation is a new contract that "discharges immediately an existing contractual obligation" and "creates a new contractual obligation by … including as the new obligor a party who was not previously obligated." *Id*. (quoting *Miss. Motor Fin., Inc. v. Enis*, 181 So. 2d 903, 904 (Miss. 1966)). An implied novation occurs "where the facts and circumstances demonstrate that it was the intention of the parties to substitute one party for another." *Id*. at 479–80. Further, an implied novation "requires substantial proof that the creditor impliedly accepted the new debtor in the place of the old and it must not appear that the creditor intended to hold both the new and old debtor for the obligation." *Id*. at 480 (quoting *First Am. Nat'l Bank of Iuka v. Alcorn, Inc.*, 361 So. 2d 481, 487–88 (Miss. 1978)). Whether implied assent to substitute a new party for the original party existed is a factual determination. *Miss. Ins. Guar. Ass'n v. MS Cas. Ins. Co.*, 947 So. 2d 865, 871 (Miss. 2006) (quoting *First Am. Nat'l Bank.*, 361 So. 2d at 487–88). "The burden of proof rests on the party

8

asserting a novation to establish it." *Matter of Estate of Jones*, 249 So. 3d 452, 459 (Miss. Ct. App. 2018) (citing *Morgan v. Jackson Ready–Mix Concrete*, 157 So. 2d 772, 780 (Miss. 1963)).

Here, the text of the Development Services Agreement does not expressly state that it discharges any existing contractual obligations between the plaintiffs and Case. *See* Doc. #36-1. Case relies on an unauthenticated September 3, 2021, email he received from Reeves—which states that "it is [his] opinion that the remaining $60,000 can be paid 100% to Rosemark and Rosemark can distribute those funds to other interested parties"—as proof that the parties intended the Development Services Agreement to operate as a novation of the 2020 Agreement regarding the $60,000 payment. Doc. #48-1 at PageID 536. Rutledge's affidavit states that "the execution of … the Development [Services] Agreement [was a] procedural necessit[y] driven by investor and regulatory requirements;" and the Development Services Agreement "facilitated the closing of the Sanda Mills deal but [was] never intended to—and did not—replace or supersede the original relationship between Case and [the plaintiffs]." Doc. #42-1 at PageID 505. Based on the evidence submitted, the Court does not find substantial proof that the parties clearly intended for the Development Services Agreement to substitute Rosemark for the plaintiffs with respect to the $60,000 fee and extinguish the plaintiffs' entitlement to the fee under the 2020 Agreement.

### C. Summary

Because the plaintiffs seek recovery for breach of the 2020 Agreement between them and Case, and because Case has not shown that the Development Services Agreement extinguished the plaintiffs' entitlement to the $60,000.00 fee, the plaintiffs are the proper parties in interest.

### V
### Conclusion

"Defendant's Objection and Motion to Dismiss or Add Party under Federal Rules of Civil Procedure 17(a)" [36] is **DENIED**.

**SO ORDERED**, this 30th day of March, 2026.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

10